# Meeder, Appellant, *v.* Goehring.

*Assignment for creditors—Set-off—Act of June 4, 1901, P. L. 404—Insolvency.*

Where at the time of an assignment for creditors, a contract by the assignor to drill an oil well is unfinished, and the assignee completes the work and brings suit for the contract price, the defendant in the action may set off a claim growing out of mutual dealings between him and the assignor before the date of assignment.

Argued May 20, 1903.   Appeal, No. 9, April T., 1904, by plaintiff, from judgment of C. P. Butler Co., Dec. T., 1903, No. 27, on verdict for plaintiff in case of Edward Meeder, Assignee of W. E. Wilkins, Jr., v. M. M. Goehring.   Before RICE, P. J., BEAVER, ORLADY, W. D. PORTER, MORRISON and HENDERSON, JJ.   Affirmed.

Assumpsit on a contract.

On a question reserved on a special verdict GALBREATH, P. J., filed the following opinion :

Under the special verdict and question reserved in this case the court is called to pass upon the question whether or not the creditor, who is also a debtor of an assigned estate, is entitled to maintain his claim, by way of set-off, in an action brought against him by the assignee for benefit of creditors.

On November 9, 1901, W. E. Wilkins executed a deed of voluntary assignment of all his property, to Edwin Meeder, the plaintiff, in trust for the benefit of creditors.   Prior to the date of said assignment, Wilkins had entered into an agreement in writing, under seal, with M. M. Goehring, the defendant, to furnish all necessary tools and labor and drill a well for oil and gas purposes for a consideration therein agreed upon. This contract was in process of fulfillment at the time the deed of assignment was executed, and was completed by Wilkins's assignee after entering upon said trust.   Prior to the date of the assignment there had been mutual dealings of a business character, in the usual and ordinary course of business, between Wilkins and the defendant, and at the date of the assignment Wilkins was indebted to the defendant in the amount

of $498.50, growing out of these mutual dealings.    After completion of the above mentioned contract plaintiff's claim, against defendant, in that account, amounted to $573.50, for which suit is brought, and against which the defendant claims the right to set off per said claim of $498.50.    On part of plaintiff it is contended that under the Act of June 4, 1901, P. L. 404, relating to insolvency and assignments for benefit of creditors, such set-off cannot be allowed as a matter of law, that to do so would be, in effect, to allow a preference in favor of the creditor claiming the right of set-off.

It cannot be questioned that under the law as it existed prior to the act of June 4, 1901, above referred to, the right of set-off obtained in favor of a defendant in a suit brought by an assignee for benefit of creditors.    A number of authorities sustain this position, among which are Jordan v. Sharlock, 84 Pa. 366, and Skiles v. Houston, 110 Pa. 254.

Is the right of set-off taken away by the act of 1901 ?    It is an act, as we learn from its title, inter alia, " forbidding certain preferences."    The forbidden acts are described as those committed in contemplation of insolvency, with a view to give a preference to any creditor or person, etc, and are pointed out in the first section of said act.    The forbidden preferences would seem to be those growing out of and resting upon the forbidden acts.    The statute bars out all collusive or unfair attempts to give or obtain a preference to or in behalf of any creditor.    The impression, however, is given from the language of the second  section, that the act should not operate adversely to any transaction  arising  in the  usual and  ordinary course of business, done in good faith, and without any guilty knowledge or collusive interest.

I do not find that the question of the right of set-off, under the act of 1901, has been passed upon by any court, but as this act is analogous to the national bankrupt law, the administration of the latter may throw some light on the question under consideration.

" In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other and the balance only shall be allowed or paid : " Collier on Bankruptcy, sec. 68.

Such is the provision of the bankrupt act.    But this we

learn was declaratory of existing law. The court in the case of Sawyer v. Hoag, 17 Wall. 610, says this provision was not intended to enlarge the doctrine of set-off, or to enable the party to make a set-off in cases where the principle of legal or equitable set-off did not previously authorize it. We may, therefore, conclude that the right of set-off exists and is recognized in the administration of the bankrupt law, independently of the bankrupt act. And if so, then the same principles which make it operative there, would seem to require its recognition in the administration and construction of the act of assembly now being considered.

Against this, however, it is urged that to allow the set-off claimed in this case, would be to give a preference to defendant, and that this is contrary to the intention and purpose of the act.

To this it may be answered (1) that set-off is not included in the preferences specified and forbidden in the act; (2) that the claim sought to be set off in this case arose in the usual and ordinary course of business, between the assignor and the defendant; (3) that there is no allegation of fraud or collusion, with respect to this claim, in the first of the assignor or defendant in order to a preference or otherwise, and (4) the right of set-off is essentially an equitable one applied largely in bills for an account in courts of equity and rests upon the underlying principle that where there have been mutual dealings between parties the only indebtedness of one to the other is that which is ascertained and determined by a balancing of their accounts. Courts of law give efficacy to this same principle in their recognition of the right of set-off.

It is urged further, however, on part of the plaintiff, that under the act of 1901, the assignee represents the creditors, that under the old law he represented the assignor and that this fact will operate to take away the right of set-off which existed under the old law. This is a non sequiter. The cause assigned does not seem adequate to the result claimed as growing out of it. If, as is contended under the act of 1901, an assignment brings all the assets of the assignor within the custody of the law, to be administered for the benefit of the creditors, that same law, which takes the property into its grasp, impresses itself in the estate thus held, with all its equitable

provisions and established rules by which it may be determined what these assets are which may be claimed and administered for the benefit of all the creditors. The fact of the assignment cannot have the effect of increasing the estate of the assignor, and yet this would be the effect if the claim of the plaintiff in this case can be increased by withholding from defendant the right of set-off which existed before the assignment was made, and by the exercise of which right alone the true indebtedness of defendant to plaintiff's assignor could have been ascertained. And this seems to be the meaning of the act of 1901. In section 17 it provides that "he" (the assignee) "shall be vested with all the property of the insolvent, real or personal, which the insolvent could have sold, assigned or conveyed, or which might have been taken in execution or otherwise made liable for his debts or engagements, or any of them, at law or equity." Who will claim that by attachment at the hands of a creditor of the assignor, before assignment, the defendant, as garnishee, could have been deprived of her set-off?

The same section further provides that the assignee may "sue for and recover, in his own name as such assignee any assets which the insolvent might sue for and recover, or which any of his creditors might make available in payment of their claims; and any recovery had shall inure to the benefit of all, in proportion to their respective claims." Under these plain provisions of the act, therefore, the assignee has no rights superior to those which formerly existed in his assignor, the defendant's right of set-off has not been impaired, and the assets which are to be administered for the benefit of the creditors are the property and claims which the assignor owned or could have recovered, or which could have been made available before the act of assignment by his creditors, and no others.

In accordance with these views judgment is directed to be entered, on the special verdict and under the question reserved, in favor of the plaintiff and against the defendant, for the sum of $75.00 in payment of jury fee, April 13, 1903.

*Error assigned* was the judgment entered.

*Lev. McQuistion,* of *McQuistion & Wilson,* for appellant.— The right of set-off prior to the Act of June 4, 1901, P. L.

404, under one aspect of this case, no one will question. Since that act, however, the legal status of the parties has been materially changed. The assignee no longer represents the debtor or assignor, being bound where he is bound. He no longer stands in the shoes of the assignor, collecting and distributing the estate for him. When a cause of action is transferred by an assignment, which passes the legal title, a debt due by the assignor cannot be pleaded as defense to a suit brought by the assignee, because the mutuality which is essential to a set-off is gone in form, and the court cannot look beyond the record to see whether it exists in substance: Spencer v. Babcock, 22 Barb. 326; Beckwith v. Union Bank of New York, 9 N. Y. 211.

A debt due by one man cannot be set off in a suit brought by another, although the second is acting as the representative of the first: Isberg v. Bowden, 8 Exch. Rep. 852.

*W. D. Brandon*, for appellee.—The assignee in bankruptcy or insolvency is not a purchaser for value, but he will take subject to any equity that could have been made available against the assignor. The act of June 4, 1901, makes no change in the law. The case in hand is simply a case of voluntary assignment and the same rules are applicable: Rose v. Hart, 2 Smith's Leading Cases, * 308.

OPINION BY BEAVER, J., October 5, 1903:

On June 5, 1901, W. E. Wilkins, whose assignee the plaintiff is, entered into a written agreement with the defendant to drill for her an oil well, upon the premises and in the manner described therein, in consideration of the sum of sixty cents per lineal foot. By the terms of the agreement, " All money due at any time, on demand made by first party, after the completion of well, except a credit of $260 for tools and bill for wood furnished." On the 9th of November following, the well being then unfinished, Wilkins executed a deed of voluntary assignment of all his property, real and personal, to the plaintiff. Prior to the said assignment, the defendant had paid on account of the work done, in addition to the $260 mentioned in the agreement, sundry amounts of cash, in wood, and the hire of certain tools furnished by her and in the value of tools lost by Wilkins a sum equal to or greater than the amount of

work done by Wilkins under his contract. When the assignment was made, therefore, the assignee took an unfinished contract, under the terms of which the money for its execution was not due until after its completion. It was necessary, therefore, for him to complete the contract, in order to collect the price for drilling the well.

It is well to have clearly in mind, therefore, what came into his hands as a part of the assigned estate of the assignor. It was an unfinished contract which he was compelled to finish in order to secure anything for the creditors, upon which sundry payments had been made apparently in good faith. There being neither fraud nor collusion anywhere alleged or shown, why did he not take it subject to all the payments which had been made on account and subject to payment for the use of the tools and other materials furnished by the defendant, in order that the contract of Wilkins should he finished? Why were not the items of set-off set forth in the affidavit, the amount of which was subsequently agreed upon by the parties, for practical purposes as much a payment as the $260 agreed to be paid in the written agreement itself and the $200 subsequently paid to the assignee for work done by him upon the well? They grew out of the same transaction, were in effect a contribution by the defendant to the completion of the work and were apparently essential to its completion. Upon this state of facts, we cannot see that the provisions of the Act of June 4, 1901, P. L. 404, change in any respect the rights of the defendant in setting up the items of set-off claimed by her and which were allowed by the court below in entering judgment upon the special verdict from what they were before the passage of that act.

The attempt is made in the argument of the appellant to distinguish between the rights of the parties now and heretofore from the fact that, under the law of voluntary assignments, as understood prior to the act of June 4, 1901, supra, the assignee was held to be the representative of the debtor and that, under the provisions of section 17 of said act, he is distinctly declared to be "the representative of the creditors of the insolvent." So far as this particular case is concerned, this would seem to be a distinction without any practical difference.

457, (1903).]              Opinion of the Court.

Upon the trial a special verdict was found by the jury as follows : " The jury find that the whole amount of plaintiff's claim against the defendant is $573.50, to which the defendant has a set-off against plaintiff's assignor, W. E. Wilkins, amounting to $489.50. If the court be of the opinion that the set-off is legal and ought to be allowed in law, then we find a verdict for the plaintiff and against the defendant for the sum of $75.00. If the court be of the opinion, however, that the set-off is illegal and ought not to be allowed in law, then we find a verdict in favor of the plaintiff and against the defendant in the sum of $573.50." Upon this verdict the court, in an opinion exhaustive and convincing, entered judgment for the plaintiff for $75.00. The action in so doing is practically the only alleged error.

Upon the facts as we have stated them, we can see no error in the action of the court, and its opinion in entering judgment fully vindicates that action. We can profitably add nothing to the reasons assigned by the court for its action and, inasmuch as the relevant authorities cited by it justify the entry of the judgment, we need not quote them here. Judgment affirmed.